■ EASTERN SHOPPING CENTERS, INC., Appellant, v. TRENHOLM MOTELS, INC., et al., Respondents.— STALEY, JR., J. Appeal (1) from an order of the Supreme Court at Special Term, entered June 5, 1969 in Broome County, which granted a motion by defendants for summary judgment dismissing the complaint, and (2) from the judgment entered thereon. On May 22, 1964 plaintiff and Edward W. Trenholm entered into an agreement for the sale of certain land owned by plaintiff in a large tract that plaintiff was developing as a shopping center in the Town of Vestal, New York. The purchase price was $90,000 and the agreement provided that it was agreed between the parties that the purchaser intended to construct a motel and restaurant on the premises. The agreement further provided that: " If the construction of such motel and restaurant has not been commenced on or before January 1, 1965, the Seller shall have the privilege to purchase the premises from the Purchaser, upon

giving thirty (30) days written notice to the Purchaser by registered or certified mail of its intention to purchase and upon the expiration of such thirty (30) day period, the Purchaser agrees to convey the premises to the Seller upon the Seller paying to the Purchaser an amount equal to the sales prices of the premises". The agreement of purchase was thereafter assigned to respondent Trenholm Motels, Inc. (hereinafter called "Trenholm"). On August 26, 1964 plaintiff conveyed the property to Trenholm taking as part of the purchase price a purchase money mortgage for $67,500 with interest at $5\frac{1}{2}\%$ per annum payable in quarterly installments of $3,375 plus interest. No reference to the option for repurchase was contained in the deed. No construction work had been commenced by January 1, 1965, and on January 5, 1965 Trenholm wrote plaintiff a letter explaining that the bid for the construction work was $300,000 over budget and that the plans were being revised for rebid, and asked plaintiff to advise Trenholm if it had any questions. Plaintiff never answered the letter of January 5. There was no further communication between the parties until August 5, 1968 when plaintiff wrote to the attorney for Trenholm calling attention to the option clause in the agreement and stating that "Before forwarding the required notice to your client, we wish you to know of our intentions." On August 8, 1968 the attorney for Trenholm answered plaintiff's letter of August 5 stating "My client is, of course, aware of the clause in the deed regarding construction, but as you know we have been trying to get off the ground on this matter, but because of architectural problems and mortgage problems have not been able to do so as of this moment. As proof of our intentions, we have a quality court franchise for this location which has cost us $10,000. We are working on a matter which we hope to conclude within 90 days and we would ask your indulgence." The next communication between the parties was on October 17, 1968 when plaintiff mailed the notice of its intention to exercise the option. On the same day defendants Gardner and Olsen received and accepted Trenholm's offer to sell the property to them for $153,000 which sale was consummated by delivery of a deed on October 29, 1968. Plaintiff commenced its action for specific performance of the contract on December 5, 1968 demanding that the property be conveyed to plaintiff on payment of $90,000 or, in the alternative, that the plaintiff recover damages for its losses. During the period from January 1, 1965 to August 5, 1968 Trenholm paid mortgage payments, interest, taxes, paving costs and the franchise fee of $10,000. During this period the property appreciated in value from $90,000 to $153,000, the amount paid on October 29, 1968. On this motion for summary judgment, Trenholm contends that the unreasonably long period of time which expired after January 1, 1965 before plaintiff made any attempt to exercise its alleged rights has, as a matter of law, precluded plaintiff from exercising the option on October 17, 1968. The option provided in the agreement became operative on January 1, 1965, and it is only reasonable that the agreement contemplated exercise of the option at that time or shortly thereafter. After receiving Trenholm's letter of January 5, 1965 plaintiff had no communication with Trenholm relative to the option for more than three years and seven months after it became effective. During this period Trenholm performed all the obligations of ownership, expending substantial sums in the form of taxes, interest, improvements to the property, and development costs. In addition, the property greatly increased in value during this period. If plaintiff by its delay was guilty of laches, then defendants have a good and valid defense and are entitled to summary judgment. Since an action for specific performance is an equitable action, defendants may seek equitable relief where plaintiff in the assertion of its claim unreasonably and inexcusably delayed in acting to enforce its rights to the prejudice of the defendant and to its injury. (Groes-

*beck* v. *Morgan*, 206 N. Y. 385; *Greenfield* v. *Denner*, 6 A D 2d 263; *Prouty* v. *Drake*, 18 Misc 2d 887.) In *Prouty* v. *Drake* (*supra*) the court stated at page 891: " The underlying basis of the defense of laches is that the plaintiff has unreasonably and inexcusably delayed to the prejudice of the defendant and by so doing has worked a disadvantage or injury to the defendant (*Seligson* v. *Weiss*, 222 App. Div. 634, 638). There is no more established principle that equity, as a prerequisite to its intervention, requires that a party shall have acted with reasonable promptness in presenting his claim for relief, having regard for the circumstances of the particular case. The doctrine of laches is a salutary one, designed to bar stale demands, the enforcement of which would result in inequity." The defense of laches requires that in addition to a mere lapse of time, the circumstances must indicate prejudice to the defendant. (36 N. Y. Jur., Limitations and Laches, § 158.) " While it is true that mere delay, without prejudice, will not bar the allowance of equitable relief (*Weiss* v. *Mayflower Doughnut Corp.*, 1 N Y 2d 310, 318), where a party's delay in asserting his rights has become unconscionable and where the party against whom the alleged right is sought to be asserted has been induced by such delay to incur expense or take other measures which will now result in prejudice to it if the long-delayed request for equitable relief is granted, a court of equity ought to refuse to aid the party so belatedly seeking to assert his claimed rights." (*Zaccaro* v. *Congregation Tifereth Israel of Forst Hills*, 20 N Y 2d 77, 80.) To hold that plaintiff's exercise of the option on October 17, 1968 was valid would result in permitting plaintiff to profit from its own delay to the irreversible detriment to the defendant Trenholm. Plaintiff was guilty of laches in failing to give notice of the exercise of the option before October 17, 1968. The cause of action asserted by plaintiff for damages is also subject to the requirement that plaintiff's right to exercise the option must be acted upon within a reasonable time. While the determination of what is a reasonable time is usually a question of fact, under the circumstances here, where there are no disputed facts, what is a reasonable time becomes a question of law and the case is a proper one for summary judgment. (*Gulf Oil Corp.* v. *Buram Realty Co.*, 11 N Y 2d 223; *Greenwich Bank* v. *Hartford Fire Ins. Co.*, 250 N. Y. 116; *Manhattan Gear & Instrument Co.* v. *2350 Linden Blvd. Corp.*, 27 A D 2d 570.) The delay of over three years and seven months before plaintiff took any action at all, in reference to the option must be regarded as an unreasonable period of time. Since the option was not exercised within a reasonable period, it had expired when plaintiff finally attempted to exercise it. Therefore, plaintiff has no remedy either at law or in equity, either for specific performance or for damages. Judgment and order affirmed, with costs. Herlihy, P. J., Staley, Jr., Greenblott, Cooke and Sweeney, JJ., concur in memorandum by Staley, Jr., J.